# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THOMAS E. PEREZ, Secretary of Labor,    )
United States Department of Labor,    )
   )
     Plaintiff,    )
   )     **No. 11 C 3019**
     v.    )
   )     **Chief Judge Rubén Castillo**
SCOTT WALLIS, *et al.*,    )
   )
     Defendants.    )

## MEMORANDUM OPINION AND ORDER

The Secretary of the U.S. Department of Labor ("the Secretary") brought this action against Scott Wallis ("Wallis"), Ronald Eriksen ("Eriksen"), USA Baby, Inc., USA Baby, Inc. 401(k) Plan, and USA Baby, Inc. Health Plan for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (R. 1, Compl. ¶ 1.) Presently before the Court are the Secretary's separate motions seeking summary judgment against Wallis and Eriksen (collectively "Defendants"). (R. 137, Sec'y's Mot. Summ. J. against Wallis; R. 132, Sec'y's Mot. Summ. J. against Eriksen.) For the reasons set forth below, the motions are granted.

## RELEVANT FACTS

### I. Northern District of Illinois Local Rule 56.1

Before summarizing the material facts, the Court must address Local Rule 56.1, which imposes "certain requirements for supporting and opposing motions for summary judgment." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1 assists the Court "by organizing the evidence, identifying undisputed facts, and demonstrating

precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Id.* (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999)). The U.S. Court of Appeals for the Seventh Circuit has emphasized that Local Rule 56.1 is "not a mere formality." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). Rather, it "is designed . . . to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Id.* (quoting *Waldridge*, 24 F.3d at 923-24).

To that end, Local Rule 56.1 requires a party moving for summary judgment to submit, among other things, a statement of undisputed material facts consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a)(3). The opposing party must then submit, among other things, a concise response to the movant's statement of facts containing "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Unless controverted in this manner, "all material facts set forth in the movant's statement are deemed admitted." *Bordelon*, 233 F.3d at 527. "Thus, a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000); *see also Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004) ("The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal.").

2

In addition, a Local Rule 56.1(b)(3) response "is not the place for purely argumentative denials," *Malec*, 191 F.R.D. at 584, nor is it the place for submitting additional facts, *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). Instead, to properly present additional facts to the Court, the non-moving party must submit a separate statement, "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(C). The Seventh Circuit has "consistently upheld a district court's discretion to require strict compliance" with Local Rule 56.1. *Bordelon*, 233 F.3d at 527.

Here, Defendants failed to comply with Local Rule 56.1. While they filed a joint response to the Secretary's motions, they did not provide any supporting evidence or point to specific documents in the record; instead, they offer general denials, irrelevant arguments, and inflammatory statements about alleged misconduct by the Secretary. (*See* R. 147, Defs.' Resp. at 1-89.) As required by Local Rule 56.2, the Secretary served Defendants with the notice required for *pro se* litigants, which explains how to prepare a proper response, how to defeat a summary judgment motion, and the consequences of not complying with the Local and Federal Rules. (*See* R. 135, Notice; R. 140, Notice.) The fact that Defendants are proceeding *pro se* does not excuse their failure to comply with the Rules. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (district court did not abuse its discretion in adopting moving party's version of the facts where *pro se* litigant failed to comply with Local Rule 56.1); *Lumpkins-Benford v. Allstate Ins. Co.*, 987 F. Supp.2d 807, 812 (N.D. Ill. 2013) (deeming movant's facts admitted where non-movant, a *pro se* litigant, failed to support her response with

3

citations to admissible evidence, and instead offered "conclusory assertions, conjecture, additional facts, or argumentative denials"). Accordingly, the Secretary's facts are deemed admitted.

## II.     Relevant Facts

U.S.A. Baby, Inc. ("USA Baby"), a company specializing in the retail of infant and toddler furniture, was incorporated in Illinois on October 16, 2001. (R. 138, Sec'y's Facts ¶¶ 3-4; R. 138-24, Illinois Secretary of State Search; R. 133, Sec'y's Facts ¶¶ 3-4; R. 133-19, 2010 USA Baby Website Printout.) On September 5, 2008, USA Baby filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. (R. 138, Sec'y's Facts ¶ 6; R. 133, Sec'y's Facts ¶ 6.) On February 11, 2009, the case was converted to a Chapter 7 bankruptcy. (R. 138, Sec'y's Facts ¶ 6; R. 133, Sec'y's Facts ¶ 6.) On October 3, 2012, the bankruptcy case was closed, and USA Baby ceased to exist as a corporate entity. (R. 138, Sec'y's Facts ¶ 6; R. 133, Sec'y's Facts ¶ 6.)

From 2005 to 2009, Wallis served various roles within USA Baby, including: Chief Financial Officer from January 2005 to November 2008; Chief Operating Officer from August 2005 to November 2008; and President from November 2008 to April 2009. (R. 138, Sec'y's Facts ¶ 8.) Wallis was also a five percent shareholder of USA Baby stock. (R. 138, Sec'y's Facts ¶ 8; R. 138-16, Def. Eriksen's Answer to Interrogs. ¶¶ 7-8; R. 138-17, Def. Wallis' Answer to Interrogs., ¶¶ 3, 7; R. 133, Sec'y's Facts ¶ 9.) In addition to his positions with USA Baby, Wallis also provided consulting services to USA Baby though various corporate entities, including Scott Wallis & Associates and Lighthouse Publications, Inc. (R. 138, Sec'y's Facts ¶¶ 52-53; R. 138-26, Wallis Dep. at 15-16.)

From 2001 to 2008, Eriksen served various roles at USA Baby, including: Chairman of the Board from 2001 to 2008; Chief Executive Officer from May 2004 to December 2008; and President from October 2007 to November 2008. (R. 138, Sec'y's Facts ¶ 7; R. 138-15, Defs.' Joint Answer ¶ 9; R. 138-16, Def. Eriksen's Answer to Interrogs. ¶¶ 7-8; R. 133, Sec'y's Facts ¶¶ 7-8; R. 133-8, Payroll Rs., at 12- 28.) Eriksen was also a 78.23% majority shareholder of USA Baby stock, and earned a weekly salary of $3,202.22. (R. 138, Sec'y's Facts ¶ 7; R. 138-15, Defs.' Joint Answer ¶ 9; R. 138-16, Def. Eriksen's Answer to Interrogs. ¶¶ 3, 7-8; R. 133, Sec'y's Facts ¶¶ 7-8; R. 133-8, Payroll Rs., at 12-28.)

A.    The 401(k) Plan, Health Plans, and Accounting Procedures of USA Baby

On May 18, 2004, USA Baby established a 401(k) plan ("the 401(k) Plan") in order to provide retirement and other incidental benefits to its employees. (R. 138, Sec'y's Facts ¶ 18; R. 138-2, USA Baby 401(k) Plan at 35; R. 133, Sec'y's Facts ¶ 15.) Employees could make salary deferral contributions to the 401(k) Plan. (R. 138, Sec'y's Facts ¶ 19; R. 138-2, USA Baby 401(k) Plan at 35; R. 138-3, Summ. Plan Description of USA Baby 401(k) Plan at 3; R. 133, Sec'y's Facts ¶ 16.) Qualified Plan Consultants ("QPC") was the third-party administrator of the 401(k) Plan. (R. 138, Sec'y's Facts ¶ 14; R. 138-5, John Hancock Letter at 2; R. 133, Sec'y's Facts ¶ 13; R. 133-6, QPC Letter and Authorization.) John Hancock Life Insurance Company ("John Hancock") was the asset custodian of the 401(k) Plan. (R. 138, Sec'y's Facts ¶ 15; R. 138-5, John Hancock Letter at 2; R. 133, Sec'y's Facts ¶ 14.)

From February 1, 2004, to May 1, 2008, USA Baby held a group health insurance policy ("Blue Cross Health Plan") with Blue Cross Blue Shield of Illinois. (R. 138, Sec'y's Facts ¶¶ 16, 20; R. 138-11, Appl. to Blue Cross Benefit Program at 2.) USA Baby established the Blue Cross Health Plan "in order to provide medical benefits to employees of USA Baby." (R. 138,

5

Sec'y's Facts ¶¶ 16, 20.) Under the Blue Cross Health Plan, premiums were due on the first calendar day of each month. (R. 138, Sec'y's Facts ¶ 23; R. 138-11, Appl. to Blue Cross Blue Shield of Ill. Benefit Program at 3.) Effective May 1, 2008, Blue Cross terminated the policy because USA Baby failed to pay the required premiums. (R. 138, Sec'y's Facts ¶ 24; R. 138-12, Letter from Blue Cross and Invoices at 2, 7.) On October 1, 2008, USA Baby obtained a group health insurance policy from Humana ("Humana Health Plan"). (R. 138, Sec'y's Facts ¶ 17; R. 138-9, Humana Engagement Letter, at 2.) However, on October 31, 2008, Humana terminated the policy because USA Baby failed to pay the required premiums. (R. 138, Sec'y's Facts ¶¶ 17, 26; R. 138-19, Courtney Decl. ¶ 10; R. 138-10, Humana Invoice at 2; R. 138-15, Defs.' Joint Answer ¶ 28.)

In his various capacities at the company, Wallis had control and authority to send checks to the 401(k) Plan, as well as to the Blue Cross and Humana Health Plans (collectively "the Health Plans"). (R. 138. Sec'y's Facts ¶¶ 28-29; R. 138-18, Benard Decl. ¶ 10; R. 138-20, Courtney Decl. ¶ 13.) As the named trustee of the 401(k) Plan, Eriksen had the power to invest, manage, and control assets of the Plan. (R. 133, Sec'y's Facts ¶¶ 17-18; R. 133-2, USA Baby 401(k) Plan at 7; R. 133-7, Letter from Eriksen.)

From February 2008 through December 2008, USA Baby's accounting department provided Wallis with a list of payables each week, including the employee salary deferrals to the 401(k) Plan and the Health Plans. (R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶ 6; R. 138-19, Courtney Decl. ¶ 5; R. 138-20, Horstman Decl. ¶ 7.) Wallis reviewed the lists of payables and directed which bills to pay, and which bills not to pay. (R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶¶ 6-7; R. 138-20, Horstman Decl. ¶¶ 6-7; R. 138-19, Courtney Decl. ¶¶ 5, 7; R. 138-21, Rivera Decl. ¶¶ 7-10.) Accounting department staff would then present

6

checks to Eriksen for his signature. (R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶ 6; R. 138-19, Courtney Decl. ¶ 5; R. 138-20, Horstman Decl. ¶ 6; R. 138-21, Rivera Decl. ¶¶ 7-10.)

**B.     Wallis's and Eriksen's Conduct In Connection With The 401(k) Plan**

From February 22, 2008, to September 19, 2008, USA Baby withheld employee contributions to the 401(k) Plan totaling $6,708.18. (R. 138, Sec'y's Facts ¶ 30; R. 138-13, Payroll Rs. at 2-27.) During that time, the withheld contributions were not remitted to the 401(k) Plan; instead, the contributions were used to pay USA Baby's general expenses. (R. 138, Sec'y's Facts ¶¶ 31-33; 138-15, Defs.' Joint Answer at 12; R. 138-18, Benard Decl. ¶¶ 11, 23; R. 138-20, Horstman Decl. ¶¶ 11-12; R.138-13, Payroll Recs. at 2-27; R. 133-9, John Hancock Docs. at 6; R. 138-22, Wodka Decl., Exs. 1 & 2; R. 133, Sec'y's Facts ¶¶ 20-21.) Based on the 401(k) Plan's rate of return, the lost opportunity costs associated with these contributions total $1,041.47. (R. 133, Sec'y's Facts ¶¶ 22-23; R. 133-17, Wodka Decl.)

From approximately May 2008 to February 2009, Wallis instructed Mary Benard, Vice President of Finance and Administration, and James Courtney, Senior Vice President overseeing the accounting department, not to remit participant salary contributions to the 401(k) Plan. (R. 138, Sec'y's Facts ¶¶ 45-47; R. 138-18, Benard Decl. ¶¶ 11, 19; R. 138-19, Courtney Decl. ¶¶ 7, 9; R. 138-20, Horstman Decl. ¶ 17.) Eriksen was informed by both Benard and James Horstman, accounting manager and controller at USA Baby, that employee contributions were not being remitted to the 401(k) Plan; however, he elected not to take any action to remedy this, and instead instructed staff to do what Wallis directed with respect to the contributions. (R. 133, Sec'y's Facts ¶¶ 12, 25, 27-28; R. 133-8, Payroll Rs. at 2-20; R. 133-14, Benard Decl. ¶¶ 17-18; R. 133-16, Horstman Decl. ¶16.) During the period that employee contributions went unremitted, USA Baby continued to pay Wallis and Eriksen their salaries, and also made

payments for Eriksen's car and company credit card. (R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶¶ 22-24; R. 138-20, Horstman Decl. ¶ 18; R. 138-21, Rivera Decl. ¶ 11.)

## C.   Wallis's Conduct Regarding the Health Plans

From May 2, 2008, to November 28, 2008, USA Baby withheld employee contributions to the Health Plans totaling $4,216.05. (R. 138, Sec'y's Facts ¶ 36; R. 138-13, Payroll Rs. at 9-28; R. 138-22, Wodka Decl. ¶ 4 & Ex. 3.) These withholdings were not forwarded to Blue Cross or Humana, and instead were used to pay USA Baby's expenses. (R. 138, Sec'y's Facts ¶¶ 36-42; R. 138-10, Humana Invoice; R. 138-13, Payroll Rs. at 29-32; R. 138-22, Wodka Decl. at Ex. 3.) Based on Internal Revenue Code interest rates, the lost opportunity costs associated with these delinquent employee contributions total $1,128.06. (R. 138, Sec'y's Facts ¶¶ 43-44; R. 138-22, Wodka Decl. ¶ 4 & Ex. 1.)

From April 2008 to July 2008, Wallis regularly instructed Benard not to forward contributions to the Blue Cross Health Plan. (R. 138, Sec'y's Facts ¶ 48; R. 138-18, Benard Decl. ¶¶ 14, 19.) From approximately October 2008 to November 2008, Wallis directed Courtney not to remit contributions to the Humana Health Plan. (R. 138, Sec'y's Facts ¶ 51; R. 138-19, Courtney Decl. ¶¶ 7, 10-11). During this same period, Wallis regularly approved payments to himself and his consulting companies from USA Baby's general operating account. (R. 138, Sec'y's Facts ¶¶ 52-53; R. 138-26, Wallis Dep. at 15-16, 41; R. 138-18, Benard Decl. ¶ 22; R. 138-20, Horstman Decl. ¶¶ 11, 18-19.) This included salary payments of approximately $10,000 per month. (R. 138, Sec'y's Facts ¶¶ 54-55; R. 138-20, Horstman Decl. ¶ 18; R. 138-18, Benard Decl. ¶ 22; R. 138-26, Wallis Dep. at 43; R. 138-21, Rivera Decl. ¶ 11.)

## PROCEDURAL HISTORY

On May 6, 2011, the Secretary filed a complaint against Wallis, Eriksen, USA Baby, Inc., USA Baby, Inc. 401(k) Plan, and USA Baby, Inc. Health Plan alleging multiple ERISA violations. (R. 1, Compl.) On July 14, 2011, the Court entered a default against USA Baby, Inc., USA Baby, Inc., 401(k) Plan, and USA Baby, Inc., Health Plan. (R. 14, Min. Entry.) The Court later entered a default judgment as to USA Baby, Inc. (R. 81, Min. Entry.) On October 23, 2012, Defendants Wallis and Eriksen filed a joint answer to the complaint, and also raised various affirmative defenses and third-party claims. (R. 62, Defs.' Joint Answer.) The Court later struck all but two affirmative defenses, and also granted a motion to dismiss by third-party defendant Travelers Indemnity Company. (R. 128, Order.) On December 17, 2013, the Court denied Eriksen's motion for judgment on the pleadings. (R. 131, Min. Entry.)

On June 27, 2014, the Secretary separately moved for summary judgment against Wallis and Eriksen. (R. 132, Sec'y's Mot. Summ. J.; R. 137, Sec'y's Mot. Summ. J.) Among other relief, the Secretary seeks a permanent injunction preventing Defendants from serving as fiduciaries to any ERISA-covered employee benefit plan now or in the future. (R. 139, Sec'y's Mem. in Supp. Mot. Summ. J. against Wallis at 13; R. 134, Sec'y's Mem. in Supp. Mot. Summ. J. against Eriksen at 12.) In addition, the Secretary seeks monetary damages from Defendants representing losses to the benefit plans. (R. 139, Sec'y's Mem. at 14; R. 134, Sec'y's Mem. at 13.) On September 17, 2014, Defendants filed a joint response in opposition to the Secretary's motions for summary judgment. (R. 147, Defs.' Resp.) Thereafter, the Secretary filed a combined reply. (R. 149, Sec'y's Reply.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "District courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). In addition, not all disputes will preclude the entry of judgment: A disputed fact is material only if it would affect the outcome of the suit under governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). At the summary judgment stage, the Court is not permitted to weigh conflicting evidence or make credibility determinations, which are functions of the jury. *Omnicare*, 629 F.3d at 704-05.

The movant has the initial burden of demonstrating an entitlement to summary judgment, and can prevail simply by showing that the non-movant lacks evidence on which that party bears the burden of proof. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once the movant has met this burden, the non-movant must come forward with "specific facts demonstrating that there is a genuine issue for trial." *Id.* The non-movant may not rely on "mere conclusions and allegations," *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003), nor can "speculation" be used to create a genuine issue of fact, *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). In essence, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## ANALYSIS

ERISA is a comprehensive statute designed to protect the interests of participants and their beneficiaries in employee benefit plans. *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361-62 (1980); *Leigh v. Engle*, 727 F.2d 113, 139 (7th Cir. 1984). Congress' primary concern in enacting ERISA was to prevent misuse and mismanagement of plan assets, particularly through self-dealing by plan fiduciaries. *Mass. Mutt. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). The statute addresses this concern "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

## I.      Whether the Plans were ERISA-covered Plans

The Court first must determine whether USA Baby's 401(k) Plan and Health Plans constituted employee benefit plans within the meaning of 29 U.S.C. § 1002(2) and (3). ERISA defines an "employee pension benefit plan" as "any plan . . . established or maintained by an employer" that "provides retirement income to employees[.]" 29 U.S.C. § 1002(2). An "employee welfare benefit plan" is defined as "any plan . . . established or maintained by an employer . . . for the purpose of providing for its participants and their beneficiaries . . . medical, surgical, or hospital care benefits[.]" 29 U.S.C. § 1002(1).

The Secretary argues that the 401(k) Plan was established to provide retirement benefits to its employees. (R. 139, Sec'y's Mem. at 2; R. 134, Sec'y's Mem. at 2.) In support, the Secretary submits the 401(k) Plan itself, a summary description of the 401(k) Plan, and an adoption agreement detailing the provision of retirement benefits to USA Baby employees. (*See* R. 138, Sec'y's Facts ¶¶ 18-19; R. 138-2, 401(k) Plan; 138-3, 401(k) Plan Description; R. 138-4, 401(k) Plan Adoption Agreement.) As to the Health Plans, the Secretary submits evidence

detailing the establishment of the Health Plans and describing the provision of medical benefits to USA Baby employees. (*See* R. 138, Sec'y's Facts ¶¶ 16-20; R. 138-11, Blue Cross Application; R. 138-12, Blue Cross Correspondence and Invoices; R. 138-8, Humana Application; R. 139-9, Humana Engagement Letter; R. 138-10, Humana Invoice.) Defendants submit no evidence to counter these documents. Based on the record, the Court finds that the 401(k) Plan and Health Plans were covered by ERISA.

## II.     Whether Defendants Were Fiduciaries

The Court also must determine whether Defendants were "fiduciaries" pursuant to 29 U.S.C. § 1002(21)(A) and thus subject to the requirements of ERISA. Under the statute, a person is a fiduciary if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). A plan administrator or trustee of a plan is a fiduciary within the meaning of this provision. *See* 29 C.F.R. § 2509.75-8. In addition, Congress intended the term "fiduciary" to be broadly construed to include "functional" fiduciaries who exercise control or authority over an ERISA plan or its assets. *See Baker v. Kingsley*, 387 F.3d 649, 663-64 (7th Cir. 2004). An individual will be considered a fiduciary "to the extent that he exercises *any* discretionary authority or control respecting management of a plan or the disposition of its assets." *Mut. Life Ins. Co. of N.Y. v. Yampol*, 840 F.2d 421, 425 (7th Cir. 1988).

Here, the Secretary contends that Wallis was a functional fiduciary under 29 U.S.C. § 1002(21)(A) because he exercised control over unremitted employee contributions to the benefit plans. (R. 139, Sec'y's Mem. at 3-6.) Wallis counters that he was not a fiduciary

because he never formally consented to fiduciary status. (R. 147, Defs. Resp. at 14-15.) As outlined above, however, the law contains no such requirement. *See Mutual Life Ins. Co. of N.Y.*, 840 F.2d at 425; *see also Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 855 (7th Cir. 1997) ("[A] person can become a fiduciary with respect to a particular activity [under ERISA] even if there is no formal written allocation of the duty."). Wallis may not have been a named trustee, but the record demonstrates that he had control and authority over plan assets.[1]

Specifically, the record shows that employees of USA Baby regularly presented Wallis with a weekly list of payables, including the employee salary deferrals to the 401(k) Plan and the Health Plans; he then directed which bills to pay from these funds. (R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶¶ 6-7; R. 138-20, Horstman Decl. ¶¶ 6-7; R. 138-19, Courtney Decl. ¶¶ 5, 7; R. 138-21, Decl. of Melody Rivera ¶¶ 7-10.). For several months he directed that employee contributions not be forwarded to the 401(k) Plan and Health Plans, and instead these funds were used to pay USA Baby's expenses. (R. 138. Sec'y's Facts ¶¶ 45-47; R. 138-18, Benard Decl. ¶¶ 11, 19; R. 138-19, Courtney Decl. ¶¶ 7, 9; R. 138-20, Horstman Decl. ¶ 17.) Under these circumstances, the Court concludes that Wallis was a fiduciary of the 401(k) Plan and Health Plans. *See* 29 U.S.C. § 1002(21)(A); *see also Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 626 (8th Cir. 1992) ("A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets should know they are acting as a fiduciary.").

---

[1]  Under ERISA, the money withheld from employee wages for contributions to the 401(k) Plan became "plan assets" after the 15th business day of the month following the day the funds were deducted. *See* 29 C.F.R. § 2510.3-102; *United States v. Whiting*, 471 F.3d 792, 799-800 (7th Cir. 2006) (holding that unremitted employee contributions that were not delivered to their intended benefit plans and instead were retained in company's general business account constituted "plan assets"). The money withheld for contributions to the Health Plans became plan assets after the 90th day following the date that USA Baby received the funds. *See* 29 C.F.R. § 2510.3-102; *Whiting*, 471 F.3d at 799.

As to Eriksen, the Secretary contends that he was a fiduciary with respect to the 401(k) Plan because he was the named trustee, and also because he had discretionary authority over plan assets. (R. 134, Sec'y's Mem. at 3.) Eriksen contends that although he did consent to being a fiduciary initially, he "did not continue consent for events clearly beyond what is foreseeable." (R. 147, Defs.' Resp. at 15.) It is unclear what he means by this statement. As outlined above, the record shows that Eriksen was the named trustee of the 401(k) Plan, and that he had authority and control over plan assets. (*See* R. 133, Sec'y's Facts ¶¶ 17-18; R. 133-2, USA Baby 401(k) Plan; R. 133-7, Letter from Eriksen.) Therefore, the Court concludes that Eriksen was a fiduciary of the 401(k) Plan. *See* 29 C.F.R. § 2509.75-8; *Mut. Life Ins. Co. of N.Y.*, 840 F.2d at 425.

### III. Whether Defendants Breached Their Fiduciary Duties

Based on their fiduciary status, the Secretary seeks to hold Defendants liable for multiple violations of ERISA. The Court addresses each in turn.

#### A. Sections 403(a) and 403(c)(1)

The Secretary first seeks to hold Defendants liable for violations of Sections 403(a) and 403(c)(1). (R. 139, Sec'y's Mem. at 7; R. 134, Sec'y's Mem. at 5.) Those sections provide that "all assets of an employee benefit plan shall be held in trust by one or more trustees," and further, that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(a), (c).

Here, the record shows that Wallis directed that employee contributions not be remitted to the 401(k) Plan; rather, under Wallis's direction, the company retained the contributions in its

general account and used them to pay operating expenses. (R. 138, Sec'y's Facts ¶¶ 27, 31-32, 45-48; R. 138-18, Benard Decl. ¶¶ 11, 19; R. 138-19, Courtney Decl. ¶¶ 7, 9; R. 138-20, Horstman Decl. ¶ 17.) In taking such action, Wallis effectively directed that plan assets be used for the benefit of USA Baby, rather than for the exclusive benefit of participants and their beneficiaries. *See Solis v. Hartmann*, No. 10 C 123, 2012 WL 3779050, *7 (N.D. Ill. Aug. 31, 2012) (fiduciaries violated Sections 403(a) and 403(c)(1) by failing to remit employee contributions to a benefit plan and instead retaining them in the company's general operating account). Wallis argues that there is no evidence he ever actually signed any checks, (*see* R. 147, Defs.' Resp., Ex. 3, Wallis Aff. ¶ 36), but as explained above, that is not the basis on which the Secretary seeks to impose liability. Based on the evidence, the Court finds that Wallis violated his fiduciary duties under Section 403(a) and 403(c)(1).

As to Ericksen, the record shows that he was the named trustee of the 401(k) Plan, and also that he had the power to manage and control plan assets. (R. 133, Sec'y's Facts ¶¶ 17-18.) Despite having knowledge that employee contributions were not being remitted to the 401(k) Plan, Eriksen took no corrective action with respect to the plan assets. (*Id.* ¶¶ 25, 27-28; R. 133-14, Benard Decl. ¶¶ 17-18; R. 133-16, Horstman Decl. ¶ 16.) The record shows that Eriksen was a signatory on USA Baby's general account, and that he could have written a check at any point to remit the delinquent contributions; he did not do so, and instead turned a blind eye to the fact that plan assets were being misused. (R. 133, Sec'y's Facts ¶¶ 24-28, 32, 42.) This constituted a breach of his duty to hold plan assets in trust and to use plan assets exclusively for the benefit of plan participants. *See* 29 U.S.C. § 1103(a), (c); *see also Free v. Briody*, 732 F.2d 1331, 1335-36 (7th Cir. 1984) (fiduciary can be liable for "nonfeasance" under ERISA, and therefore trustee was responsible for losses incurred by plan when he failed to take proper action, thereby

15

enabling a breach by co-fiduciary); *Chao v. Unique Mfg. Co., Inc.*, 649 F.Supp.2d 827, 835 (N.D. Ill. 2009) (plan trustee had inherent duty to monitor whether employer was making proper payments to ERISA plan, "including reasonably following up on any suspicions that proper and adequate payments were not being made"). Therefore, the Court concludes that Eriksen violated Section 403(a) and 403(c)(1).

**B.    Section 404(a)(1)(A)**

The Secretary next contends that Defendants violated Section 404(a)(1)(A). (R. 139, Sec'y's Mem. at 8; R. 134, Sec'y's Mem. at 7.) That section provides as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1). Under this provision, ERISA fiduciaries are subject to a duty of loyalty. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571-72 (1985). This requires that a fiduciary exercise "complete and undivided loyalty to the beneficiaries of the trust" with an "eye single to the interests of the participants and beneficiaries." *Leigh*, 727 F.2d at 123 (internal citations omitted).

As outlined above, Wallis directed Benard and Courtney not to remit employee contributions to the Plans; instead, USA Baby retained those contributions in its operating budget and used them to pay general expenses. (R. 138, Sec'y's Facts ¶¶ 31-32.) As to Eriksen, the

record shows that despite having knowledge that employee contributions to the 401(k) Plan were not being properly remitted, he chose not to take any corrective action. (R. 133, Sec'y's Facts ¶¶ 25, 27-28.) Defendants have not submitted evidence to counter these facts. Therefore, the Court concludes that both Defendants breached their duty of loyalty. *See Frahm v. Equitable Life Assur. Soc'y of United States*, 137 F.3d 955, 959 (7th Cir. 1998) ("Deliberately favoring the corporate treasury when administering . . . a plan is inconsistent with the statute."); *Unique Mfg. Co.*, 649 F. Supp.2d at 833-34 (fiduciary was liable under Section 404(a)(1)(A) for "not ensuring that those assets were transferred to the Plan and for allowing Plan assets in the corporate account to be instead spent on other expenses"); *Hartmann*, 2012 WL 3779050, at *6-7 (fiduciaries breached their duty of loyalty when they used plan assets to pay company expenses rather than for the exclusive benefit of plan participants and their beneficiaries).

### C.    Section 406(a)(1)(D)

The Secretary next seeks to hold Defendants liable for violating Section 406(a)(1)(D). (R. 139, Sec'y's Mem. at 10; R. 134, Sec'y's Mem. at 9.) That section provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106(a)(1)(D). A "party in interest" is defined as "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," as well as "an employer any of whose employees are covered by such plan[.]" 29 U.S.C. § 1002(14)(A), (C). Congress intended for courts to interpret these terms broadly "to prevent the use of plan assets for any interest, financial or nonfinancial, other than an interest of the plan and its beneficiaries." *Leigh*, 727 F.2d at 126 (citation omitted).

17

USA Baby qualifies as a party in interest under the statute. *See* 29 U.S.C. § 1002(14)(C) (party in interest includes an "employer . . . whose employees are covered" by an ERISA plan); *Hartmann*, 2012 WL 3779050, *6-7 (concluding that a company was a party in interest, and thus chairman and chief financial officer violated Section 406(a)(1)(D) by transferring plan assets to the general operating accounts of the company in order to pay company expenses). The Court concludes that Wallis violated Section 406(a)(1)(D) by directing that plan assets be used for the benefit of USA Baby rather than for plan participants and their beneficiaries. In addition, as a functional fiduciary of the Plans, Wallis himself falls within the definition of party in interest. *See* 29 U.S.C. § 1002(14)(A). The record shows that during the time Wallis directed accounting department staff not to remit employee contributions to the benefit plans, he regularly approved payments to himself and his consulting companies. (R. 138, Sec'y's Facts ¶¶ 52-53.) Because Wallis himself was a party in interest, he violated Section 406(a)(1)(D) when he approved these payments.

Eriksen also falls within the definition of a party in interest because he was the named trustee of the 401(k) Plan. *See* 29 U.S.C. § 1002(14)(A). The record shows that during the time employee contributions to the 401(k) Plan went unremitted, Eriksen received a substantial weekly salary, as well as payments for his company credit card and company car. (R. 133, Sec'y's Facts ¶ 7; R. 138, Sec'y's Facts ¶ 27; R. 138-18, Benard Decl. ¶¶ 22-24; R. 138-20, Horstman Decl. ¶ 18; R. 138-21, Rivera Decl. ¶ 11.) Eriksen, as a party in interest, violated Section 406(a)(1)(D) by allowing misuse of plan assets to his benefit and to the detriment of plan participants.

### D. Section 406(b)(1)

The Secretary also argues that Defendants violated Section 406(b)(1). (R. 139, Sec'y's Mem. at 11; R. 134, Sec'y's Mem. at 10.) That section provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). As outlined above, during these events Wallis was an officer of USA Baby and also a shareholder of company stock. (R. 138, Sec'y's Facts ¶ 8.) The record shows that Wallis received a substantial salary, as well as payments to his consulting companies, while employee contributions to the benefit plans went unremitted. (*Id.* ¶¶ 52-53.) USA Baby gained directly, and Wallis gained indirectly, when plan assets were used to pay USA Baby's expenses. *See Lowen v. Tower*, 829 F.2d 1209, 1214 (2d Cir. 1987) (fiduciary violated Section 406(b)(1) by using plan assets to invest in companies in which fiduciary owned an equity interest); *Hartmann*, 2012 WL 3779050, at *7 (fiduciary violated Section 406(b)(1) when prohibited conduct resulted in direct financial gain to company and indirect financial gains to chairman and chief financial officer). Therefore, the Court concludes that Wallis violated Section 406(b)(1).

Eriksen was also an officer and the majority shareholder of USA Baby stock. (R. 133, Sec'y's Facts ¶¶ 7-8.) As outlined above, the record shows that Eriksen permitted employee contributions to the 401(k) Plan to be misused on company expenses, including payment of his salary and company credit card. (*Id.* ¶¶ 25-28.) Eriksen personally gained from this conduct, and thus, he violated Section 406(b)(1). *See Lowen*, 829 F.2d at 1214; *Hartmann*, 2012 WL 3779050, at *7.

### E. Section 406(b)(2)

Finally, the Secretary seeks to hold both Defendants liable for violating Section 406(b)(2). (R. 139, Sec'y's Mem. at 12; R. 134, Sec'y's Mem. at 11.) That section provides that

a fiduciary may not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]" 29 U.S.C. §1106(b)(2). In essence, the purpose of Section 406(b) is to prevent a fiduciary "from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton*, 57 F.3d 270, 289 (3d Cir. 1995) (citation omitted). Section 406(b) is construed broadly, *see Leigh*, 727 F.2d at 126, and imposes liability "even where there is no taint of scandal, hint of self-dealing, [and] no trace of bad faith," *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (internal quotation marks and citation omitted).

USA Baby, the corporate entity, had interests that were distinct from the interests of plan participants and their beneficiaries. *See Hartmann*, 2012 WL 3779050, at *7 (fiduciary violated Section 406(b)(2) by using plan assets to pay company expenses, because the company's interest in its general operation was distinct from the interests of a 401(k) plan's participants and beneficiaries). Wallis, as a fiduciary, violated Section 406(b)(2) when he instructed that employee contributions not be remitted to the Plans and instead be retained in the company's operating budget. (*See* R. 138, Sec'y's Facts ¶¶ 45-47; R. 138-18, Benard Decl. ¶¶ 11, 19; R. 138-19, Courtney Decl. ¶¶ 7, 9; R. 138-20, Horstman Decl. ¶ 17.) Similarly, Eriksen, who had control over the employee contributions to the 401(k) Plan, knew that employee contributions were not being remitted to the 401(k) Plan, but he did not take actions to ensure that plan assets were properly held in trust. (R. 133, Sec'y's Facts ¶¶ 25-28; R. 133-14, Benard Decl. ¶¶17-18; R. 133-16, Horstman Decl. ¶ 16.) Accordingly, the Court concludes that both Defendants violated Section 406(b)(2).

## IV.  Defendants' Arguments

As outlined above, Defendants have not rebutted the evidence submitted by the Secretary with admissible evidence.  They do, however, offer several other arguments as to why the motions for summary judgment should be denied.[2]  (R. 147, Defs.' Resp. at 1-89.)

First, Defendants argue that summary judgment is improper because the Secretary committed violations of *Brady v. Maryland*, 373 U.S. 83 (1963), in connection with this case. (R. 147, Defs.' Resp. at 7-9.)  *Brady* provides that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]"  *Brady*, 373 U.S. at 87.  *Brady* is a rule of criminal law, however, and it has not been extended outside of the criminal context.  *Millspaugh v. Cnty. Dept. of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172, 1175 n.+ (7th Cir. 1991) ("There is so far no parallel to *Brady* in civil litigation."); *Mister Disc. Stockbrokers, Inc. v. S.E.C.*, 768 F.2d 875, 878 (7th Cir. 1985) (rejecting *Brady* argument in civil case, because "*Brady v. Maryland* . . . involved a criminal prosecution, while the petition currently before the court involves the review of an administrative agency proceeding and not a violation of the criminal law"); *see also United States v. Project on Gov't Oversight*, 839 F.Supp.2d 330, 342 (D.D.C. 2012 ) (concluding that *Brady* did not apply to civil enforcement proceeding brought by the United States, because

---

[2]  Defendants label their filing in a confusing manner as both a joint response to the Secretary's motions for summary judgment and a "countermotion for summary judgment on their affirmative defenses."  (R. 147, Defs.' Resp. at 1.)  This Court previously struck all but two of Defendants' twenty-six affirmative defenses: Affirmative Defense Seventeen, arguing "unclean hands" by the Department of Labor, and Affirmative Defense Nineteen, arguing that Wallis never formally consented to serve as an ERISA trustee.  (*See* R. 62, Joint Answer at 24-27; R. 128, Ord. at 2-12.)  Both of those arguments are discussed herein.  To the extent Defendants intended their motion to serve as a cross-motion for summary judgment, they have not complied with the procedural rules for bringing such a motion.  *See generally* Fed. R. Civ. P. 56; N.D. Ill. L.R. 56.1.  Nor have they demonstrated an entitlement to summary judgment under the applicable law for the reasons explained in this opinion.

"[w]hat is at stake in this case is money and reputation, not 'whether someone will be locked away'"). The Court therefore finds Defendants' reliance on *Brady* unavailing.

The Secretary does have discovery obligations pursuant to the Federal Rules of Civil Procedure, but—Defendants' inflammatory statements notwithstanding—there is nothing in the record to suggest that the Secretary failed to comply with those obligations. Defendants do not point the Court to a formal discovery request that was ignored by the Secretary, nor is there any record of Defendants having filed a motion to compel during the nearly four years this case has been pending.[3]

Although unclear, Defendants' real complaint appears to be that the Secretary did not provide them with copies of the declarations submitted along with his motions for summary judgment *before* the motions were filed. (*See* R. 147, Defs.' Resp. at 10 ("Plaintiff filed declarations in support of MSJ or MSJ2 from Bernard, Courtney, Horstman, Rivera and Coleman. Plaintiff did not disclose the existence of said declarations prior to submitting them in MSJ or MSJ2.").) There is no such requirement in the Federal Rules. It was wholly proper for the Secretary to prepare and file declarations in support of his motions for summary judgment, *see* Fed. R. Civ. P. 56(c)(1)(A), and the declarations otherwise comport with the requirements of

---

[3] Defendants assert in passing that the Secretary violated his discovery obligations by "failing to respond to requests for admission and failing to supplement or correct." (R. 147, Defs.' Resp. at 9.) The record shows that the Secretary did in fact respond to Defendants' request for admissions, and indeed, Defendants quote at length from the responses in their memorandum. (*Id.* at 85-89.) If Defendants believed the Secretary's responses were somehow inadequate, they were free to file a motion to compel. They did not do so, and at this point discovery has been closed for more than 18 months. (R. 89, Min. Entry.) Additionally, it is apparent that Defendants' requests for admission were geared toward uncovering whether an employee of USA Baby was the initial point of contact to the Department of Labor, leading to the Secretary's investigation and ultimately this lawsuit. (*See* R. 147, Defs.' Resp. at 85-89.) Such information is not relevant to whether Defendants committed ERISA violations *before* the Secretary's investigation began.

Rule 56, *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Therefore, the Court finds this argument unavailing. Because there is no evidence the Secretary committed a discovery violation, there is no basis to award Defendants $10,000 in monetary sanctions as they request. (*See* R. 147, Defs.' Resp. at 16.)

Defendants next argue that the declarations submitted by USA Baby accounting department staff are "inadmissible" because of an "accountant-client privilege." (R. 147, Defs. Resp. at 2.) However, "[t]here is no accountant-client privilege." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *see also Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009) ("Accounting advice, even if given by an attorney, is not privileged."). In limited circumstances, material transmitted to an accountant may be privileged if the accountant was acting as an agent of an attorney, and the communication was made for the sole purpose of assisting with the provision of legal advice. *In re Grand Jury*, 220 F.3d at 571. "[W]hat is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*." *Id.* (citation omitted). This exception is wholly inapplicable here. Defendants were not "clients" of the accounting department staff, nor are they seeking to shield materials transmitted to these employees in confidence in connection with legal advice sought from an attorney. Rather, Defendants are trying to prevent their employees from providing first-hand accounts about Defendants' actions in connection with USA Baby's benefit plans. The Court rejects this argument.

Defendants also make blanket objections to the authenticity of certain documents submitted by the Secretary. (R. 147, Defs.' Resp. at 2.) At the summary judgment stage, the

Court "may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (citation omitted). Here, the Secretary has submitted declarations from the custodians of the records authenticating them as business records. (R. 149, Sec'y's Reply, Exs. AA-FF.) The Secretary's investigator also submitted declarations describing her personal knowledge of how she computed the losses to the Plans, and reflecting that she is competent to testify regarding her calculation of the loss amounts. (*See* R. 138-22, Wodka Decl.; R. 133-17, Wodka Decl.) This is proper evidence under the Federal Rules, and Defendants have submitted no evidence to counter it. *See generally* Fed. R. Evid. 803(6) (business records are admissible under the Federal Rules of Evidence); Fed. R. Civ. P. 56(c)(4) (declarations are proper if they are based on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant would be competent to testify on the matters stated). Accordingly, the Court finds Defendants' argument unavailing.

Defendants also argue that the Secretary engaged in improper conduct which, in their view, precludes the Secretary from obtaining relief under the doctrine of "unclean hands." (R. 147, Defs.' Resp. at 9 & Ex. 3-4, Wallis Aff., Erickson Aff.) The equitable doctrine of "unclean hands" provides that "a court will not adjudicate a case if a judgment for the plaintiff would encourage or reward criminal or other unlawful activity." *Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012). For the doctrine to apply, the plaintiff must have engaged in bad faith or misconduct "relative to the matter in which he seeks relief." *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 149 (7th Cir. 1992) (citation omitted).

Defendants do not meet this standard here. To the extent Defendants are referring to the Secretary's alleged "*Brady*" and/or discovery violations, those arguments are rejected for the

reasons stated above. To the extent Defendants are referring to actions taken by the Secretary in the bankruptcy case, that argument fails for other reasons. Notably, Wallis previously brought a separate lawsuit raising allegations of wrong-doing by the Department of Labor, the bankruptcy trustee, and a host of other defendants (a total of 165 named defendants and 125 John Doe defendants) who were involved in USA Baby's bankruptcy case, but his complaint was dismissed for failure to state a claim. *Wallis v. Levine*, 12 C 5285, 2013 WL 53896 (N.D. Ill. Jan. 2, 2013). The Seventh Circuit affirmed the dismissal on appeal. *Wallis v. Levine*, 13-1594, 2013 WL 5345502 (7th Cir. Jun. 11, 2013). As a result of Wallis's frivolous filings in that and several other cases, the Seventh Circuit fined him $10,000 and imposed a filing restriction against him until the fine is paid.[4] *See id.* at *1. The Court will not revisit those previously rejected claims here.

In addition, Defendants have attempted to raise this argument several times during the course of this litigation, and the Court has rejected the argument each time.[5] As the Court has explained, the bankruptcy proceeding does not absolve Defendants of liability for actions they took before the bankruptcy trustee or the Department of Labor became involved in USA Baby's

---

[4] This Court previously granted Wallis special permission to file a response to the motion for summary judgment notwithstanding the filing restriction. (R. 143, Min. Entry.)

[5] Defendants argued in a motion to dismiss that the bankruptcy trustee was a necessary party because he was liable for any ERISA violations that occurred. (R. 54, Mem. Op. & Order at 28-30.) The Court ruled that the bankruptcy trustee was not a necessary party, noting that the trustee could not possibly be liable for the alleged violations of ERISA because he was appointed after the violations occurred. (*Id.* at 30 n.6.) In their Answer, Defendants attempted to resurrect this issue by asserting various affirmative defenses related to USA Baby's bankruptcy proceeding, contending that the bankruptcy absolved them of ERISA liability. (R. 62, Defs.' Joint Answer.) This Court struck all these affirmative defenses, concluding that USA Baby's bankruptcy proceeding had no bearing on the allegations in this case. (R. 128, Order at 2-7.) In their subsequent motion for judgment on the pleadings, Defendants made the same type of arguments about the bankruptcy proceeding. (R. 129, Defs.' Mot. J. Pleadings at 9-12.) The Court summarily denied the motion in open court. (R. 131, Min. Entry.)

activities. (*See* R. 54, Mem. Op. & Order at 28-30; R. 128, Order at 2-5.) In short, Defendants' arguments are unpersuasive. Based on the record, the Secretary has demonstrated an entitlement to summary judgment as to both Wallis and Eriksen.

## V.    Scope of Relief

As a final matter, the Court must consider the appropriate scope of relief under ERISA, which provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109; *see also Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) ("The remedy in an action for breach of fiduciary duty is for the fiduciary to 'make good' the loss to the plan.") (quoting 29 U.S.C. § 1109). Here, the Secretary seeks monetary damages, representing the losses to the 401(k) Plan and Health Plans, as well as permanent injunctive relief barring Defendants from serving as fiduciaries to any ERISA-covered benefit plan in the future. (R. 139, Sec'y's Mem. at 13-14; R. 134, Sec'y's Mem. at 12-13.)

Regarding the request for injunctive relief, "ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction." *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991); *see also Reich v. Lancaster*, 55 F.3d 1034, 1054 (5th Cir. 1995) (permanent injunctive relief preventing defendants from serving as a fiduciary to any ERISA-covered plan was proper where defendants committed "significant violations of their ERISA fiduciary duties"); *Chao v. Linder*, No. 05 C 3812, 2007 WL 1655254, *15 (N.D. Ill. May 31, 2007) (permanent injunction is appropriate

26

under ERISA if fiduciary "participated in egregious self-dealing or other serious misconduct"). In this case, Defendants' conduct does not amount to an isolated mistake, but rather to a series of purposeful decisions that were made over a period of months. As is fully outlined above, the record shows that Defendants continued to pay themselves substantial salaries and also benefitted as shareholders of USA Baby stock by diverting plan assets to the company's general account. (R. 138, Sec'y's Facts ¶¶ 7-8, 54-55.) The Court also considers that Defendants do not take any responsibility for what occurred, and instead attempt to place blame on the Secretary, the bankruptcy trustee, and others who became involved in USA Baby's activities well after the events giving rise to this lawsuit. Based on the record, the Court finds a permanent injunction appropriate.

The Secretary also seeks $13,695.03 from Wallis, and $7,749.65 from Eriksen as compensation to the 401(k) Plan and Health Plans. (R. 139, Sec'y's Mem. at 14; R. 134, Sec'y's Mem. at 13.) The Secretary has submitted evidence demonstrating that Defendants' conduct resulted in losses in these amounts. (*See* R. 138-22, Wodka Decl.; R. 133-17, Wodka Decl.) Defendants have submitted no evidence to contradict these figures. Because ERISA requires that Defendants "make good" on the losses to the benefit plans caused by their conduct, *Peabody*, 636 F.3d at 373, the Court will award the Secretary the full amounts requested.

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motions for summary judgment against Scott Wallis and Ronald Eriksen (R. 132, 137). The Court awards the Secretary $13,695.03 from Scott Wallis and $7,749.65 from Ronald Eriksen. The Court grants the Secretary a permanent injunction precluding Scott Wallis and Ronald Eriksen from serving as fiduciaries to any ERISA-covered plan. The parties are ordered to appear for a status hearing

27

on January 13, 2015, at 9:45 a.m., at which time the Secretary can present this Court with a final injunctive order consistent with this opinion.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: December 30, 2014**